**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **PARESH THAKKAR,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UKG, INC.,**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Civil Action No.**<br>**26-11852-BEM** |

**MEMORANDUM AND ORDER ON**
**DEFENDANT'S MOTION TO DISMISS**

**MURPHY, J.**

This is an employment dispute between Plaintiff Paresh Thakkar and his former employer Defendant UKG, Inc. ("UKG"). Thakkar alleges that, beginning in 2017 until his resignation in 2025, UKG engaged in a pattern of conduct which constituted discrimination based on Thakkar's national origin and age. He brings claims for national origin discrimination under Title VII (Count I); age discrimination under the Age Discrimination and Employment Act ("ADEA") (Count II); age discrimination under Mass. Gen. Laws ch. 151B (Count III); national origin discrimination under Mass. Gen. Laws ch. 151B (Count IV); retaliation under Title VII (Count V); retaliation under ADEA (Count VI); retaliation under Mass. Gen. Laws ch. 151B (Count VII); failure to promote under Mass. Gen. Laws ch. 151B (Count VIII); disparate treatment under Mass. Gen. Laws ch. 151B (Count IX); and constructive discharge under Mass. Gen. Laws ch. 151B (Count X). For the reasons stated herein the Court will grant UKG's motion to dismiss as to Counts V–X and deny UKG's motion to dismiss as to Counts I–IV.

## I. Factual & Procedural Background

The Court draws the following facts from Thakkar's complaint, Dkt. 1 ("Complaint" or "Compl."), and accepts them as true for the purposes of the instant motion.

Thakkar is 66 years old and of Indian national origin. *Id.* ¶ 4. He worked for UKG and its predecessor companies for more than twenty years, beginning in April 2003, until July 2, 2025, making him "one of the company's longest-serving" employees. *Id.* ¶¶ 1, 4, 9. Thakkar started his career with UKG as a Corporate Technology Consultant and was promoted in 2015 to Manager of the Corporate Technology Services team. *Id.* ¶¶ 9, 14.

In 2016, after an evaluation that was "positive across all categories," Thakkar was told he would be "considered for promotion to Senior Manager the following year." *Id.* ¶ 19. In 2017, UKG promoted Rick Garrity a "younger Caucasian manager" with less tenure and "narrower technical experience" than Thakkar. *Id.* ¶ 20. After Garrity's promotion, Thakkar was assigned to report to Garrity and management told Thakkar that he would be considered for promotion next year. *Id.* ¶¶ 21, 23.

In 2017 and 2018, Thakkar took on new responsibilities including a critical cloud transition project as well as oversight over a second support team. *Id.* ¶¶ 21–22, 24–25. Thakkar alleges that, after taking on these new roles, he became "an indispensable figure within [UKG]'s internal support structure" with an established "reputation for reliability." *Id.* ¶¶ 26–27. Ultimately, Thakkar was not promoted in 2018 or any year afterward. *Id.* ¶ 35. Instead, "younger, less-experienced employees" were promoted to "equivalent or superior positions." *Id.* Thakkar alleges that "no employees of Indian national origin" were appointed to Senior Manager or equivalent leadership positions within Thakkar's division. *Id.* ¶ 37.

In 2023, Thakkar began reporting to Adam Speidel, a "significantly younger white male manager with less tenure and experience." *Id.* ¶ 37. Under Speidel, Thakkar alleges that he was

"excluded from key meetings" and "left out of decisions about priorities and project scope that he had previously been integral to." *Id.* ¶ 32. Some of Thakkar's managerial duties "were partially reassigned to younger employees" and his year-end bonus was reduced. *Id.* ¶ 38. In a December 2023 performance review, Speidel gave Thakkar a rating of "2"—the lowest of Thakkar's career. *Id.* ¶ 52. Thakkar was also asked to step down as a Manager of the Corporate Technology Services team, "or else he would be placed on a non-defined [performance improvement plan]." *Id.* ¶ 51. Thakkar elected to step down rather than be placed on a performance improvement plan ("PIP"). *Id.* By mid-2024, his project lead roles "were eliminated altogether." *Id.* ¶ 41.

Around this time, Thakkar alleges that "the company began to use language that became a coded shorthand for generational turnover and minority stereotyping." *Id.* ¶ 36. Older employees, like Thakkar, were described as "not strategic." *Id.* Many fellow employees over fifty years old "were being subjected to the same pattern" including role reassignments or "subtl[e] pressure[] to retire." *Id.* ¶ 43. In 2024, Speidel and others labeled Thakkar as "too technical" and "not aligned with modern management." *Id.* ¶ 39. Thakkar was also characterized as "resistant to change" and "not strategic enough." *Id.* ¶ 57. He was told he was "not suited to the company's 'new leadership culture.'" *Id.* ¶ 156. When Thakkar asked for clarification on these qualities, Speidel "could not identify objective metrics" and instead said the assessments were based on Speidel's perception. *Id.* ¶ 58. In his December 2024 performance review, Thakkar was, again, given an "2" rating. *Id.* ¶ 62. When Thakkar asked why, his new acting manager said he "had no idea" what Thakkar had done in the past six months. *Id.*

At his 2025 mid-year performance review, Thakkar was characterized as "resistan[t] to change" and an "insufficient" collaborator. *Id.* ¶ 68. On June 25, 2025, shortly after the review,

he was placed on a PIP.[1] *Id.* Thakkar alleges that the "ambiguous" PIP included "stale tasks," which had already been "rendered obsolete" by system updates. *Id.* ¶¶ 69–70. The PIP also demanded "fifteen to twenty hours per week" of additional documentation, which Thakkar alleges was "far more than what was expected of any other manager." *Id.* ¶ 71. Thakkar spoke to human resources and objected to the PIP, but those objections were ignored. *Id.* ¶ 78. "Within days," Thakkar was presented with an alternative to the PIP: a severance package. *Id.* ¶ 79. This package offered fewer weeks of pay than a prior severance package Thakkar had rejected in 2023. *Id.* ¶ 80.

On June 30, 2025, Thakkar filed a formal complaint with human resources, "alleging age-based discrimination and retaliation." *Id.* ¶ 84. After he filed his complaint, human resources representatives reiterated the terms of the PIP and "added a warning that if he failed to meet the PIP's requirements, his employment could be terminated." *Id.* ¶ 92. Two days later, on July 2, 2025, Thakkar resigned. *Id.* ¶ 93. After his departure, UKG reassigned his duties to a "younger, less-experienced employee." *Id.* ¶ 94.

Thakkar filed a Complaint in this Court on April 22, 2026. *See generally* Compl. He brings ten claims against UKG: national origin discrimination under Title VII (Count I), *id.* ¶¶ 120–32; age discrimination under the Age Discrimination and Employment Act ("ADEA") (Count II), *id.* ¶¶ 133–43; age discrimination under Mass. Gen. Laws ch. 151B (Count III), *id.* ¶¶ 144–52; national origin discrimination under Mass. Gen. Laws ch. 151B (Count IV), *id.* ¶¶ 153–61; retaliation under Title VII (Count V), *id.* ¶¶ 162–72; retaliation under ADEA (Count VI), *id.* ¶¶ 173–82; retaliation under Mass. Gen. Laws ch. 151B (Count VII), *id.* ¶¶ 183–90; failure to promote under Mass. Gen. Laws ch. 151B (Count VIII), *id.* ¶¶ 191–98; disparate treatment under

[1] Unlike December 2023, when Thakkar was offered the choice of a demotion or PIP, *id.* ¶ 51, Thakkar was placed on the PIP without a choice in June 2025, *id.*¶ 68.

Mass. Gen. Laws ch. 151B (Count IX), *id.* ¶¶ 199-205; and constructive discharge under Mass. Gen. Laws ch. 151B (Count X), *id.* ¶¶ 206–12. On July 6, 2026, UKG filed a motion to dismiss. *See generally* Dkt. 11. The Court held a hearing on September 14, 2026, and took the motion under advisement.

## II. Legal Standard

Courts analyzing claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure must determine whether a plaintiff's factual allegations—disregarding all "conclusory" statements—"state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In making its determination, a court must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012). At the pleading stage, a plaintiff need not demonstrate that he is likely to prevail, but the "claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" *García-Catalán v. United States*, 734 F.3d 100, 102–03 (1st Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "The inquiry is usually limited to the facts alleged in the complaint, incorporated into the complaint, or susceptible to judicial notice," *Whelden v. U.S. Bank Nat'l Ass'n*, 494 F. Supp. 3d 68, 73 (D. Mass. 2020) (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)), "but the court may also consider other documents the authenticity of which is not disputed by the parties, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint," *id.* (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

## III. Discussion

### A. Counts I—IV: National Origin Discrimination & Age Discrimination

Thakkar, raising claims of age discrimination and national origin discrimination, alleges that UKG's actions constituted violations of Title VII, Mass. Gen. Laws ch. 151B, and the ADEA.

Compl. ¶¶ 120–61. UKG argues that Thakkar fails to allege an adverse employment action, and that even if he did, he cannot establish a causal connection between any adverse employment action and his membership in a protected class. Dkt. 12 at 6–12.

To determine if a complaint plausibly alleges discrimination on the basis of national origin, courts look to the four prongs of a prima facie case: (1) whether the plaintiff is a member of a protected class, (2) whether the plaintiff was qualified for his job, (3) whether the plaintiff suffered an adverse employment action, such as firing, by the employer, and (4) whether the plaintiff alleges a causal connection between the membership in a protected class and the adverse employment action. *Bhatti v. Trs. of Bos. Univ.*, 659 F.3d 64, 70 (1st Cir. 2011).[2] While Thakkar is not required to fully establish all four prongs in the pleadings, he must nonetheless allege sufficient facts to demonstrate a plausible "entitlement to relief." *Rodríguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013). The prima facie case under the ADEA is substantially similar for claims of age discrimination. *See Higgins v. State St. Corp.*, 323 F. Supp. 3d 203, 206 (D. Mass. 2018) (outlining the prima facie case for age discrimination).[3]

Here, UKG does not contest that Thakkar was qualified for his job or a member of the protected classes at issue. Instead UKG argues that the June 25, 2025 PIP was not an adverse employment action. Dkt. 12 at 8–10. While a PIP usually does not constitute an adverse employment action, it *may* be classified as such if it "impose[s] new job responsibilities, change[s] the present terms of employment, or deprive[s] an employee of potential advancement opportunities." *Walsh v. HNTB Corp.*, 169 F.4th 330, 340 (1st Cir. 2026). Thakkar claims that

---

[2] At the pleading stage, the standards under Massachusetts law and Title VII are essentially "indistinguishable." *Leaver v. Life Care Ctrs. of Am., Inc.*, 712 F. Supp. 3d 194, 201 (D. Mass. 2024).

[3] "The analyses of the ADEA and chapter 151B age discrimination claims 'are substantially similar in all relevant respects.'" *DaCosta v. Town of Plymouth*, 2014 WL 2998986, at *18 (D. Mass. July 1, 2014) (quoting *Adamson v. Walgreens Co.*, 750 F.3d 73, 83 (1st Cir. 2014)).

the PIP imposed fifteen to twenty additional hours of documentation per week. Compl. ¶ 71. In relation to a forty-hour work week, fifteen to twenty hours of new tasks could plausibly be construed as a significant change in Thakkar's job responsibilities. But ultimately, given the currently limited factual record, the Court cannot determine whether Thakkar's PIP constitutes adverse employment at this early stage. The First Circuit recently reaffirmed that this inquiry is "fact-intensive and PIP-specific." *Walsh*, 169 F.4th at 340–41. Accordingly, for the purposes of a motion to dismiss, the adverse action prong of the prima facie case is plausibly alleged.

The Court next turns to the fourth prong, a causal connection between the PIP and Thakkar's age and national origin. Reading the totality of these facts in the light most favorable to Thakkar, they are sufficient to raise a plausible inference of age and national origin discrimination. "Title VII's prohibition of disparate treatment includes 'employer decisions that are based on stereotyped thinking or other forms of less conscious bias.'" *Douglas v. J.C. Penney Co.*, 422 F. Supp. 2d 260, 275 (D. Mass. 2006) (quoting *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 42 (1st Cir. 1999)). In addition, a plaintiff may present evidence "that others similarly situated to him in all relevant respects were treated differently by the employer." *Kosereis v. Rhode Island*, 331 F.3d 207, 214 (1st Cir. 2003) (internal quotation marks omitted). Again, at this stage Thakkar need not *prove* the PIP was implemented in connection with his age or national origin. *Grajales*, 682 F.3d at 49 (citation omitted) ("'Smoking gun' proof of discrimination is rarely available, especially at the pleading stage").

Here, Thakkar points to repeated "stereotyped" comments in his reviews labeling him as "too technical," and "not aligned with modern management," along with references to his "cultural fit." Compl. ¶¶ 39, 59, 125. Thakkar also alleges other older employees were "sidelined," in a similar manner, *id.* ¶ 87, and that younger, less-experienced, white employees were repeatedly

promoted "over" Thakkar, *id.* ¶ 45. *See also id.* ¶¶ 35, 94. Finally, Thakkar alleges that after his resignation he was replaced with a "substantially younger, non-Indian employee[]." *Id.* ¶ 157. These allegations are sufficient to plausibly allege a causal connection between the PIP and Thakkar's age and national origin. UKG's motion to dismiss Counts I through IV is denied.

### B. <u>Counts V–VII: Retaliation</u>

Thakkar also alleges UKG retaliated against him for engaging in protected activity under Title VII, ADEA, and Mass. Gen. Laws ch. 151B. *Id.* ¶¶ 162–90. UKG argues that, even if Thakkar could establish an adverse employment action, there is no basis to infer that action was connected to his protected conduct. Dkt. 12 at 16.

To plausibly state a claim for retaliation under Title VII, ADEA, and Mass. Gen. Laws ch. 151B, a plaintiff "must show that: (1) he engaged in protected activity; (2) he suffered some materially adverse action; and (3) the adverse action was causally linked to his protected activity." *Charles v. Stop & Shop Supermarket Co.*, 2012 WL 2402790, at *6 (D. Mass. June 25, 2012); *see also Villanueva v. Wellesley Coll.*, 930 F.2d 124, 127 n.2 (1st Cir. 1991) ("We do not distinguish further among the various statutes [including Title VII, ADEA, and Mass. Gen. Laws ch. 151B] as the standards of liability under all are substantially identical.").

Here, the timeline set forth in the Complaint is incompatible with any plausible form of retaliation. He received the PIP on June 25, 2025. Compl. ¶ 68. He filed a formal complaint for age discrimination on June 30, 2025. *Id.* ¶ 84. Then, he resigned two days later, on July 2, 2026. *Id.* ¶ 93. "[T]o establish that an adverse employment action was caused by an employee's protected activity, the employer's decision to act adversely to the employee must postdate the protected activity." *Trainor v. HEI Hospitality, LLC*, 699 F.3d 19, 27 (1st Cir. 2012). Here, UKG presented the PIP to Thakkar *before* he filed an age discrimination complaint. *Id.* ¶ 68. Assuming the PIP

was an adverse employment action (which the Court does at this stage), it did not post-date the protected activity, and thus cannot be retaliatory.

Nor can his resignation on July 2, 2026, be construed as constructive discharge, a separate form of adverse employment action. Thakkar alleges he was caught between a rock and hard place—forced to either accept a severance package which he believed was inadequate or agree to the terms of an allegedly onerous PIP. *Id.* ¶ 90. But a constructive discharge requires an allegation that "an employer discriminates against an employee to the point such that his 'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Green v. Brennan*, 578 U.S. 547, 555 (2016) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004)). Constructive discharge claims are most commonly brought in the context of hostile work environment claims. *See Pa. State Police*, 542 U.S. at 147 ("[U]nless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress." (quoting *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1015 (7th Cir. 1997))). Here, Thakkar does not allege a work environment so odious or intolerable that a reasonable employee would be forced to resign. He argues that after his filing his formal complaint, "no remedial action was taken" and it became clear that "retaliation had set in." Compl. ¶ 92. But despite claiming that he left UKG because it "refus[ed] to investigate or remediate his discrimination," he resigned two days after his complaint. *Id.* ¶ 93. Any claim that Thakkar's decision to quit was based UKG's refusal to investigate is belied by the fact that he gave UKG less than two full days to investigate his allegations before resigning. Aside from conclusory statements that the PIP was "intolerable and coercive," Thakkar alleges no concrete facts to suggest that a reasonable employee would have felt compelled to resign after UKG failed to pause or review the PIP in 48 hours. *Id.* "The bar for establishing constructive discharge is high," and

Thakkar's Complaint "does not allege facts sufficient to constitute such conditions." *Waithe v. Cardinal Cushing Ctrs., Inc.*, 800 F. Supp. 3d 217, 229 (D. Mass. 2025).

Yet another reason supports dismissal of Thakkar's claims for retaliation under Title VII specifically. Title VII prevents employers from retaliating against an employee for "oppos[ing] any practice made an unlawful employment practice by [Title VII]," 42 U.S.C. § 2000e-3(a), which includes discriminating on the basis of an "individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(2), but not *age*. To establish a prima facie case of retaliation, a plaintiff must allege "that (1) they 'engaged in protected activity under Title VII,' (2) they 'suffered an adverse employment action,' and (3) 'the adverse employment action was causally connected to the protected activity.'" *Neece v. City of Chicopee*, 106 F.4th 83, 94 (1st Cir. 2024) (quoting *Collazo v. Bristol-Myers Squibb Mfg., Inc.*, 617 F.3d 39, 46 (1st Cir. 2010)). But Thakkar's formal complaint filed on June 30, 2026, was for *age* discrimination, not for national origin discrimination. Compl. ¶ 91. Thakkar does not allege that he complained about national origin discrimination on June 30. He therefore did not engage in any protected activity under Title VII before his resignation.

For the foregoing reasons, Thakkar fails to plausibly allege his three retaliation claims. Counts V, VI, and VII are dismissed.

### C. <u>Count VIII: Failure to Promote</u>

Thakkar also alleges that UKG denied him promotion opportunities "for years" in violation of Mass. Gen. Laws ch. 151B, § 4(1). *Id.* ¶¶ 191–98. Specifically, he alleges that in 2016, UKG informed him "that he would be considered for promotion to Senior Manager the following year," *id.* ¶ 19, but that in 2017, a "younger Caucasian manager" with "less tenure and narrower technical experience" was elevated instead of Thakkar, *id.* ¶ 20. Every year thereafter, Thakkar alleges he "was told that promotion would be reconsidered 'next cycle.'" *Id.* ¶ 35. UKG argues that this

count should be dismissed because Thakkar knew "as early as 2017 that he had been passed over for promotion" and furthermore, it was clear he would not be promoted following his December 2023 demotion. Dkt. 12 at 14 (citing Compl. ¶¶ 19–20, 51). An independent failure to promote claim, UKG argues, is therefore time barred by statute. *Id.* at 13–14.

In Massachusetts, a plaintiff must file a charge with either the Equal Employment Opportunity Commission ("EEOC") or the Massachusetts Commission Against Discrimination, within 300 days of the alleged discriminatory or retaliatory act. *See* 42 U.S.C. § 2000e-5(e)(1) (the charge must be filed "within three hundred days after the alleged unlawful employment practice occurred" if the plaintiff instituted proceedings with a state or local agency); Mass. Gen. Laws ch. 151B, § 5 ("Any complaint . . . must be so filed within 300 days after the alleged act of discrimination.").[4] Thakkar filed a claim with the EEOC on August 28, 2025. *See* Dkt. 12-2 at 1. Accordingly, challenges to discrete unlawful employment practices—including any failure to promote claims—prior to November 1, 2024 are time barred. *See Franchina v. City of Providence*, 881 F.3d 32, 46–47 (1st Cir. 2018) ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify, and, consequently, those acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." (quotations and citations omitted)). Here, Thakkar does not allege he was ever considered for promotion after his demotion in December 2023. Compl. ¶ 51. While allegations of prior promotion denials may (and do) provide context for Thakkar's timely discrimination claims, *see supra* Section III.A, he is time

[4] "Although the charge-filing period for Title VII claims is typically 180 days, it is extended to 300 days where the state anti-discrimination agency enforces a parallel state or local law, as the MCAD does." *Stone v. President and Fellows of Harvard Coll.*, 2025 WL 1380132, at *4 n.6 (D. Mass. Mar. 19, 2025) (first citing *Goldstein v. Brigham and Women's Faulkner Hosp.*, 80 F. Supp. 3d 317, 323 n.9 (D. Mass. 2015), then citing 42 U.S.C. § 2000e-5(e)(1)).

barred from raising an independent failure to promote claim. Accordingly, Count VIII is dismissed.

**D. Counts IX and X: Disparate Treatment & Constructive Discharge**

Thakkar claims that UKG's actions constitute disparate treatment in violation of Mass. Gen. Laws ch. 151B, Compl. ¶¶ 199–205, and constructive discharge in violation of Mass. Gen. Laws. ch 151B §§ 4(1), 4(1B), *id.* ¶¶ 206–12. As UKG notes, neither of these claims are cognizable under Massachusetts law. Dkt. 12 at 6 n.5, 10 n. 11.

Disparate treatment is a means of demonstrating employment discrimination under Mass. Gen. Laws ch. 151B, but is not a standalone cause of action itself. *See Whalen v. Nynex Info. Res. Co.*, 419 Mass. 792, 795 (1995) ("We have recognized a distinction between employment discrimination cases where the plaintiff alleges 'disparate treatment' and those cases involving a claim of 'disparate impact.'"). Thakkar's claims of age discrimination and national origin discrimination are indeed based upon alleged disparate treatment. *See supra* Section III.A. Count IX is therefore duplicative of those claims.

Similarly, constructive discharge "'is merely a doctrine used to prove an element of a wrongful discharge claim—that is, that the employee was in fact discharged, rather than left voluntarily'; there is 'no such independent cause of action under Massachusetts law.'" *Copp v. Nic & Zoe Co.*, 2026 WL 948565, at *13 (D. Mass. Apr. 8, 2026) (quoting *Kelleher v. Lowell Gen. Hosp.*, 98 Mass. App. Ct. 49, 51–52 (2020) (collecting cases)). In addition, the Court already addressed the insufficiency of Thakkar's constructive discharge allegations in its consideration of his retaliation claims. *See supra* Section III.B.

Perhaps recognizing this reality, Thakkar admits in his opposition to the motion to dismiss that "some counts overlap" but argues "overlapping legal theories are not grounds for dismissal." Dkt. 13 at 19. However, Thakkar does not allege "overlapping" legal theories, he alleges theories

which cannot and do not entitle him to relief. Therefore, the Court must dismiss Counts IX and X.

## IV. Conclusion

For the foregoing reasons, UKG's motion to dismiss is GRANTED as to Counts V–X and DENIED as to Counts I–IV.

**So Ordered.**

/s/ Brian E. Murphy
Brian E. Murphy
Judge, United States District Court

Dated: September 25, 2026